IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

FRANCISCO MOLINA,                                   :
      Plaintiff                              :        No. 1:19-cv-00019
                                             :
      v.                                     :        (Judge Kane)
                                             :
PENNSYLVANIA SOCIAL SERVICE                         :
UNION, SERVICE EMPLOYEES                            :
INTERNATIONAL, <u>et al.</u>,                       :
      Defendants                             :

<u>**MEMORANDUM**</u>

    Presently before the Court are Defendants Stephen Catanese, Pennsylvania Social Service Union, Service Employees International, and Lehigh County Board of Commissioners' ("Defendants") motions to dismiss Plaintiff Francisco Molina ("Plaintiff")'s first amended complaint (Doc. No. 20) pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (Doc. Nos. 27, 28).  Having heard oral argument on the motions on June 4, 2019, and upon review of the record, the parties' arguments, and the applicable law, for the reasons that follow, the Court will grant the motions.

**I.    BACKGROUND**

    **A.    Factual Background[1]**

        **1.    Plaintiff's Employment and the Collective Bargaining Agreement ("CBA")**

    Plaintiff, a resident of Lehigh County, Pennsylvania, is a former employee of the Office of Children and Youth Services of Lehigh County, Pennsylvania.  (Doc. No. 20 ¶ 8.)  As a Social Services Aide, Plaintiff was a "public employe" for purposes of Pennsylvania's Public Employee

---

[1] Unless otherwise noted, the factual background recited herein is derived from Plaintiff's amended complaint.  (Doc. No. 20.)

Relations Act ("PERA"), codified at 43 Pa. Cons. Stat. § 1101.101, et seq., "and was in a bargaining unit exclusively represented for purposes of collective bargaining by" Defendant Pennsylvania Social Service Union, Service Employees International, Local 668 ("Defendant PSSU"), which is an "employe organization" and "representative" under PERA. (Id. ¶¶ 8-9.) Defendant Stephen Catanese ("Defendant Catanese") is the president of PSSU (id. ¶ 10), and Defendant Lehigh County Board of Commissioners ("Defendant Lehigh County") acts as the legislative arm of Lehigh County's government and sets wages for county employees (id. ¶ 11). Accordingly, Defendant Lehigh County approved the collective bargaining agreement ("CBA") "setting forth [Plaintiff's] terms and conditions of employment." (Id.) Defendants PSSU and Lehigh County "have entered into the CBA, which controlled the terms and conditions of [Plaintiff's] employment." (Id. ¶ 12.) Defendants PSSU and Lehigh County "agreed to the term of the CBA, which is January 1, 2014, through December 31, 2018" and "are expected to continue to operate pursuant to the terms and conditions of the CBA, including those for [Plaintiff's] position, until they reach a successor agreement." (Id. ¶¶ 13-14.)

2.    **Relevant Provisions of the CBA and PERA**

The CBA includes, in relevant part, a "Union Security" article that, according to Plaintiff, "prohibits union members from resigning their union membership when and how they see fit." (Id. ¶ 15.) Specifically, this provision reads as follows:

> 3.1. Each employee who, on the effective date of this Agreement is a member of the Union, and each employee who becomes a member after the date shall maintain his/her membership in the Union, provided that such employee may resign from the Union during a period of fifteen (15) days prior to the expiration of this Agreement. The payment of dues and assessments uniformly required of the membership shall be the only requisite employment condition[;]

> 3.2. The Employer agrees to deduct the bi-weekly membership dues from the pay of those employees who individually request in writing that such deductions be made. The amounts to be deducted shall be certified to the Employer by the

2

Union, and the aggregate deductions of all employees shall be remitted together with an itemized statement to the Union by the last day of the succeeding month, after such deductions are made. Except as otherwise provided in Section 3.1 of this Article, the authorization shall be irrevocable during the term of the Agreement[;]

3.3 The Union may demand the discharge of any employee who, on any tender date specified, fails to comply with the provisions of this Section, by serving written notice thereof on the Employer no later than ten (10) calendar days after such tender date, if, prior to such tender date, the Union has notified the employee of the exact amount of the financial obligation due to the Union. As soon as the Employer verifies that the employee specified in such written notice failed to comply and that the discharge of the employee would not otherwise be unlawful, the Employer shall discharge the employee.

(Id.) (citing Doc. No. 20-1, CBA art. III, §§ 3.1-3.3).

Article III, Section 3.1 of the CBA also "imposes a maintenance of membership requirement mirroring, in substantive part, PERA's maintenance of membership provision" (id. ¶ 16), which defines the term "maintenance of membership" as meaning that:

all employes who have joined an employe organization or who join the employe organization in the future must remain members for the duration of a collective bargaining agreement so providing with the proviso that any such employe or employes may resign from such employe organization during a period of fifteen days prior to the expiration of any such agreement.

43 Pa. Cons. Stat. § 1101.301(18). Additionally, Section 1101.705 of PERA articulates that "[m]embership dues deductions and maintenance of membership are proper subjects of bargaining with the proviso that as to the latter, the payment of dues and assessments while members, may be the only requisite employment condition." See id. § 1101.705. Also of note is Section 1101.401 of PERA, which, according to Plaintiff, "explicitly limits the rights of public employees as to 'maintenance of membership'" (Doc. No. 20 ¶ 16) by stating that:

It shall be lawful for public employes to organize, form, join or assist in employe organizations or to engage in lawful concerted activities for the purpose of collective bargaining or other mutual aid and protection or to bargain collectively through representatives of their own free choice and such employes shall also have the right to refrain from any or all such activities, except as may be required pursuant to a maintenance of membership provision in a collective bargaining agreement.

43 PA. CONS. STAT. § 1101.401.  As stated by Plaintiff, both the CBA and PERA, therefore, "limit a public employee's right to resign from PSSU to only the 15-day window immediately preceding the expiration of the CBA."  (Doc. No. 20 ¶ 17.) Additionally, Article III, Section 3.2 of the CBA "provides for the deduction of union dues."  (Id. ¶ 18.)

Plaintiff also states that Defendant PSSU "and/or its officials represent to membership that [S]ection 3.3 of the CBA's Article III is applicable to PSSU members and nonmembers, such that PSSU members would be terminated if unable or unwilling to pay union dues."  (Id. ¶ 19.)  Plaintiff similarly alleges that Defendant PSSU and its officials "represent to membership that, if a public employee resigns his or her membership, [Defendant] PSSU would no longer provide union representation to that public employee[,]" and that "if a public employee resigns his or her membership, that public employee is no longer entitled to the terms and conditions set forth in any collective bargaining agreements."  (Id. ¶¶ 20-21.)

### 3. Events Surrounding the End of Plaintiff's Employment and Deduction of Dues

Defendant PSSU "called a meeting of PSSU members in [Plaintiff's] bargaining unit" on approximately January 10, 2018.  (Id. ¶ 22.)  At this meeting, Defendant PSSU "requested that certain PSSU members, including [Plaintiff], sign new membership cards that included authorization and assignment of dues deductions, made irrevocable from the date of signing until

dates certain or dates specified by the CBA, whichever period is longer." (Id. ¶ 23.)
Additionally, Defendant PSSU "informed membership that it needed these new membership
cards signed because all previously signed membership cards were 'invalid.'" (Id. ¶ 24.)
According to Plaintiff, neither this new membership card nor any previous membership card
"informed public employees that they have a First Amendment right not to associate with or
subsidize the speech of [Defendant] PSSU[,]" nor did it "request[] that public employees
affirmatively waive or consent to a violation of their First Amendment rights." (Id. ¶¶ 25-26.)
Plaintiff did not sign the new membership application, and as stated in the complaint, "has never,
irrespective of any previously signed membership cards, affirmatively waived or consented to a
violation of his First Amendment rights." (Id. ¶ 27.)

       Following the meeting, on June 27, 2018, Plaintiff asked Defendant Lehigh County's
Director of Human Resources, M. Judith Johnston ("Director Johnston"), "to stop deducting
union payments from his wages." (Id. ¶ 28.) According to Plaintiff, Director Johnston informed
him "that he must contact [Defendant] PSSU by certified letter, return receipt requested, in order
to stop union payments." (Id. ¶ 29.) Subsequently, on July 16, 2018, Plaintiff "sent his
resignation letter to PSSU's headquarters located at 2589 Interstate Drive, Harrisburg,
Pennsylvania, with a copy to Director Johnston[,]" and the letter "was received at PSSU's
headquarters on or about July 20, 2018." (Id. ¶¶ 30-31.) On August 14, 2018, Plaintiff "was
dismissed from his position with Lehigh County's Office of Children and Youth Services." (Id.
¶ 32.) Shortly thereafter, on August 20, 2018, "pursuant to the CBA," Plaintiff "filed a timely
grievance against [Defendant] Lehigh County seeking reinstatement and backpay" and "notified
[Defendant] Lehigh County of his intent to arbitrate and, at present, awaits initiation of such
proceedings." (Id. ¶ 33.)

According to Plaintiff, however, "even after [his] resignation," Defendant PSSU "continued to consider [him] a PSSU union member." (Id. ¶ 34.) Plaintiff alleges specifically that on approximately December 5, 2018, he was issued a new membership card accompanied by a letter that "welcom[ed] [him] to the SEIU 668 family" and "clarif[ied] that he was still entitled to membership benefits and to attend PSSU meetings." (Id. ¶ 35) (second alteration in original). Plaintiff further alleges that even after he resigned, Director Johnston continued to deduct said dues from his wages and Defendant PSSU "continued to take and/or accepted purported union dues from [his] wages." (Id. ¶¶ 36-37.) Additionally, prior to the commencement of the above-captioned case, "no Defendant, or agent or official thereof, responded to [Plaintiff's] resignation letters to confirm that his resignation was accepted." (Id. ¶ 38.)

After Plaintiff brought suit in this Court and initiated the above-captioned action on January 7, 2019 (Doc. No. 1), in a letter dated January 8, 2019, Defendant PSSU informed Plaintiff "that it had 'received [his] request to withdraw [his] participation in the union' and purported to 'refund[]' to him 'the dues withheld from the July 6, 2018 pay period through the August 17, 2018 pay period end (the last pay period dues were received)'" (Doc. No. 20 ¶ 39) (alterations in original). According to Plaintiff, Defendant PSSU "has yet to state that [Plaintiff] is no longer a union member, that it had no authority to seize funds from his wages, or that it has no authority to deduct funds from [him] following his reinstatement or award of backpay." (Id. ¶ 40.) Plaintiff further alleges that "Defendants took and accepted – and, by all indication, will continue to take and accept, in the event of reinstatement or an award of backpay – purported union dues from [Plaintiff's] wages despite the fact that such seizure of purported union dues from his wages was not properly authorized or was otherwise against [Plaintiff's] will and without his consent." (Id. ¶ 41.) Plaintiff also "objects to the compelled association with and

financial subsidization of any activities of [Defendant] PSSU and its affiliates for any purpose." (Id. ¶ 42.)

### B. Procedural Background

On January 7, 2019, Plaintiff initiated the above-captioned action by filing a complaint in this Court against Defendant PSSU; Defendant Catanese; Defendant Lehigh County; the Lehigh County Office of Children and Youth Services; Phil Armstrong, in his official capacity as County Executive of Lehigh County; and Director Johnston. (Doc. No. 1.) On January 28, 2019, Phil Armstrong, Director Johnston, the Lehigh County Board of Commissioners, and Lehigh County Office of Children and Youth Services filed a motion to dismiss the complaint (Doc. No. 13) for failure to state a claim upon which relief may be granted as to claims asserted against the Lehigh County Office of Children and Youth Services, Phil Armstrong, and Director Johnston, and also moved for a determination "that the claims against the Defendant Board of Commissioners shall be construed as claims against Lehigh County" (id. at 1). On February 11, 2019, Plaintiff filed an amended complaint (Doc. No. 20), naming as defendants only Defendant PSSU, Defendant Catanese, and Defendant Lehigh County, rendering moot the motion to dismiss filed on January 28, 2019 (Doc. No. 13).[2] On the same date, Plaintiff filed a notice of voluntary dismissal as to his claims asserted against the Lehigh County Office of Children and Youth Services, Phil Armstrong, and Director Johnston pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i). (Doc. No. 21.)

---

[2] See, e.g., Pippett v. Waterford Dev., LLC, 166 F. Supp. 2d 233, 236 (E.D. Pa. 2001) ("The filing of an amended complaint generally renders a pending motion to dismiss moot." (citing Adams v. Goodyear Tire & Rubber Co., No. 96-4228-SAC, 1997 WL 833288, at *1 (D. Kan. Dec. 19, 1997))).

In his amended complaint, Plaintiff asserts three counts, all of which are made actionable by 42 U.S.C. § 1983.[3]  Specifically, Count I asserts a violation of the First and Fourteenth Amendments to the United States Constitution on the basis that the provisions of PERA and Article III of the CBA discussed <u>supra</u>, "on their faces and as applied by Defendants, permit Defendants to require that employees remain union members throughout the life of the CBA and, therefore, violate the limited constitutional authorization for exclusive representation by public-sector unions under the First Amendment, as set forth in relevant Supreme Court caselaw."  (<u>Id.</u> at 12.)  The Supreme Court case law to which Plaintiff refers is the June 2018 decision of the United States Supreme Court set forth in <u>Janus v. American Federation of State, County, and Municipal Employees, Council 31</u>, 138 S. Ct. 2448 (2018), which Plaintiff describes as holding that "'the Constitution prohibits unions from collecting agency fee[s] or any other payment to the union' from public employees who are not members of the union without their affirmative consent."  (<u>Id.</u>) (alteration in original).

---

[3] Section 1983 is the vehicle by which private citizens can seek redress for violations of federal constitutional rights committed by state officials.  <u>See</u> 42 U.S.C. § 1983.  The statute states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

<u>Id.</u>  "Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors."  <u>Pappas v. City of Lebanon</u>, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting <u>Gonzaga Univ. v. Doe</u>, 536 U.S. 273, 284-85 (2002)).  To maintain a cause of action under Section 1983, a plaintiff must demonstrate that: (1) the conduct complained of was committed by persons acting under color of state law; and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United States.  <u>See</u> <u>Harvey v. Plains Twp. Police Dep't</u>, 421 F.3d 185, 189 (3d Cir. 2005) (quoting <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988)).

Through Count II, Plaintiff alleges that under <u>Janus</u>, Defendants have violated his First Amendment rights in that "[s]ince at least January 7, 2017, Defendants have seized funds from [him] under the authority of PERA and the CBA yet without [Plaintiff's] clear, affirmative consent or his agreement to waive his rights." (<u>Id.</u> at 15.) Plaintiff claims, therefore, that he "is entitled to the return of funds unconstitutionally seized from him since January 7, 2017, or as far back as the statute of limitations will allow." (<u>Id.</u>) Additionally, through Count III, Plaintiff alleges that Defendants violated his due process rights under the Fourteenth Amendment because they did not "provide meaningful notice to [him] of his right to object to associating with or subsidizing the speech of [Defendant] PSSU." (<u>Id.</u> ¶¶ 61-62.)[4]

In the amended complaint, Plaintiff sets forth claims for multiple forms of relief. Plaintiff seeks declaratory relief in the form of a declaratory judgment that: (1) Article III of the CBA between Defendants PSSU and Lehigh County, both facially and as applied to Plaintiff, violate the First and Fourteenth Amendments of the United States Constitution; (2) Sections 1101.301(18), 1101.401, and 1101.705 of PERA, both facially and as applied to Plaintiff, violate the First and Fourteenth Amendments to the United States Constitution; (3) under the First and Fourteenth Amendments, Defendants are not permitted to restrict Plaintiff's "right to resign from union membership at any time"; (4) the First and Fourteenth Amendments bar "Defendants from seizing [Plaintiff's] funds without his affirmative consent or waiver of First Amendment rights"; and (5) "the Fourteenth Amendment requires due process of law for union nonmembers and

_____

[4] To that end, Plaintiff asserts that "Defendants failed to provide [him] with any meaningful opportunity to object to continued seizure of his funds or a clearly defined process for asserting such an objection[,]" but "[i]nstead, Defendants put the burden on [Plaintiff] to learn, assert, and vindicate his rights with respect to union payments, with the result that union payments were unconstitutionally seized from his wages, his initial resignation was rejected by Director Johnston, and his second, restated objection to PSSU was wholly ignored until after this civil rights action was filed." (Doc. No. 20 at 17.)

members alike, specifically, meaningful notice concerning their rights and a meaningful opportunity to object to continued seizure of [Plaintiff's] funds in the context of a clearly defined process for asserting such an objection." (Id. at 19.) Plaintiff also seeks a permanent injunction barring Defendants from engaging in conduct deemed unconstitutional by this Court and enforcing Article III of the CBA "or any subsequent, substantially similar provision between [Defendants] PSSU and Lehigh County that requires [Plaintiff] to remain a member of PSSU for a particular length of time," and requiring Defendants to "expunge" Article III of the CBA; "honor [Plaintiff's] resignation from union membership"; and "refund to [Plaintiff] all funds unconstitutionally deducted from his wages from at least January 7, 2017, or as far back as the statute of limitations will allow, plus interest thereon." (Id. at 20.)[5]

On March 4, 2019, Defendants Catanese and PSSU filed a motion to dismiss Plaintiff's amended complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Doc. No. 27.) On the same date, Defendant Lehigh County filed a motion to dismiss the amended complaint for lack of jurisdiction. (Doc. No. 28.)[6] Plaintiff field a brief in opposition to both motions on April 1, 2019 (Doc. No. 33), to which Defendants PSSU and Catanese filed a brief in reply on April 15, 2019 (Doc. No. 34). On May 2, 2019, the Court granted Plaintiff's unopposed request for oral argument on the instant motions (Doc. No. 37), and held argument on June 4, 2019. At oral argument, Defendants represented to the Court that, in addition to the bases for

---

[5] Additionally, Plaintiff seeks a monetary judgment awarding him "nominal and compensatory damages . . . including, but not limited to, the amount of dues deducted from his wages without [his] affirmative consent and waiver of his First Amendment rights[,]" as well as attorney's fees and costs. (Doc. No. 20 at 20.)

[6] In its motion, Defendant Lehigh County does not cite the specific Federal Rule of Civil Procedure under which it moves to dismiss the amended complaint. (Doc. No. 28.) However, as explained more fully infra, because Defendant Lehigh County moves on the basis that subject matter jurisdiction is lacking, Defendant's motion appears to be based on Federal Rule of Civil Procedure 12(b)(1).

dismissal advanced in their briefing, they also assert that Count 3 of the amended complaint should be dismissed, as well.  Both of the pending motions to dismiss are ripe for disposition.

## II.    LEGAL STANDARD[7]

Federal Rule of Civil Procedure 12(b)(1) permits a party to move for dismissal for lack of subject matter jurisdiction.  See Fed. R. Civ. P. 12(b)(1).  Article III of the United States Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies."  See U.S. Const., art. III, § 2.  "A case becomes moot – and therefore no longer a 'Case' or 'Controversy' for purposes of Article III – 'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'"  Already, LLC v. Nike, Inc., 568 U.S. 85, 91 (2013) (quoting Murphy v. Hunt, 455 U.S. 478, 481 (1982)).   The parties must maintain a personal stake in the resolution of the dispute throughout the litigation.  See Chafin v. Chafin, 568 U.S. 165, 172 (2013).  "Therefore, 'if developments occurring during the course of adjudication eliminate a plaintiff's personal stake in the outcome of a suit, then a federal court must dismiss the case as moot.'"  Gayle v. Warden Monmouth Cty. Corr. Inst., 838 F.3d 297, 303 (quoting Rosetti v. Shalala, 12 F.3d 1216, 1224 (3d Cir. 1993)).  Stated differently, "[t]he central question of all mootness problems is whether changes in circumstances that prevailed at the beginning of the litigation have forestalled any occasion for meaningful relief."  See Rendell v. Rumsfeld, 484 F.3d 236, 240 (3d Cir. 2007) (citation and quotation omitted).

"It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice."  City of Mesquite v.

---

[7] The Court notes that while the majority of the parties' briefing addresses dismissal under Rule 12(b)(1), Defendants PSSU and Catanese also move for dismissal of all claims against Defendant Catanese for failure to state a claim upon which relief may be granted under Rule 12(b)(6), a request that Plaintiff does not oppose, and, as explained infra, the Court will grant.

Aladdin's Castle, Inc., 455 U.S. 283, 289 (1982). This is so because "if it did, the courts would be compelled to leave '[t]he defendant. . . free to return to his old ways.'" Id. at 289 & n.10 (citations omitted). The Supreme Court has announced a "stringent" standard for "determining whether a case has been mooted by the defendant's voluntary conduct." See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs, Inc., 528 U.S. 167, 189 (2000). Specifically, the Supreme Court has stated that "[a] case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." Id. (internal quotation omitted).

Factual challenges to a court's subject matter jurisdiction under Rule 12(b)(1) on the grounds of mootness can be raised at any time in the litigation. See Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891-92 (3d Cir 1977) (stating that the "12(b)(1) factual evaluation may occur at any stage of the proceedings"). In conducting this inquiry, a court may consider evidence outside the pleadings. See Davis v. Wells Fargo, 824 F.3d 333, 346 (3d Cir. 2016) (noting that a factual challenge permits a court "to weigh the evidence and satisfy itself as to the existence of its power to hear the case") (quoting Mortensen, 549 F.2d at 891). Typically the plaintiff bears the burden to persuade the court that it has subject matter jurisdiction. See Mortensen, 549 F.2d at 891 (stating that "the plaintiff will have the burden of persuasion that jurisdiction does in fact exist"); Gould, 220 F.3d at 178 (same). However, the party alleging that a claim has become moot due to a change in a defendant's conduct bears the burden to demonstrate mootness. See Friends of the Earth, 528 U.S. at 189 ("The 'heavy burden of persua[ding]' the [C]ourt that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness.") (citation omitted).

## III.    DISCUSSION

As explained _infra_, Defendants' briefing indicates that Defendants move for dismissal of certain of Plaintiffs' claims, while, at oral argument, Defendants represented that they move for dismissal of all of the claims set forth in Plaintiff's amended complaint. The Court will grant Defendants' motions and dismiss the following: Count I of the amended complaint in its entirety; Plaintiff's request for recovery of post-resignation dues asserted in Count II of the amended complaint; and all claims asserted against Defendant Catanese. Because Defendants' briefing appears inconsistent with Defendants' representations to the Court at oral argument as to Plaintiff's request for a refund of pre-resignation dues in Count II, and Count III, which sets forth Plaintiff's due process claim, the Court will order additional briefing from the parties regarding the propriety of dismissal of these claims.

A.     **Arguments of the Parties[8]**

1.     **Defendants' Arguments in Favor of Dismissal**

Defendants assert that Plaintiff's claims for prospective relief should be dismissed because Plaintiff lacks standing to request this form of relief. (Doc. Nos. 28-1 at 6, 29-1 at 13.) Specifically, Defendants argue that because Plaintiff has already been refunded for the dues in question, he faces "no risk of compulsory dues deductions." (Doc. No. 29-1 at 13.) Further, Defendants posit that the possibility that Plaintiff may be reinstated is speculative and, accordingly, insufficient to create a live case or controversy. (Doc. No. 34 at 10) ("Here, [Plaintiff] may have filed a grievance seeking to regain his job, but he does not contest that his

---

[8] In their respective briefs in support of their motions to dismiss, Defendants PSSU and Catanese and Defendant Lehigh County advance overlapping arguments in favor of dismissal, and at oral argument, counsel for Defendant Lehigh County joined in the arguments presented by counsel for Defendants PSSU and Catanese. Where such arguments overlap, the Court has noted the arguments in both sets of briefs, but for purposes of concision, declines to cite both parties' briefing herein.

termination was final and he is no longer a public employee."). In addition, Defendants state that Plaintiff lacks standing to challenge the CBA's union security provision because it was never applied to him and he was permitted to resign and stop paying dues prior to the expiration of the CBA's term, and that as to PERA, Plaintiff is no longer subject to the challenged provisions because he is no longer a member of Defendant PSSU, stating that "[e]ven if he returned to public employment, he would become subject to these provisions only if he voluntarily chose to rejoin Local 668, which he has not alleged he intends to do." (Doc. No. 29-1 at 16-17.)

Defendants also argue that Plaintiff's claim for retrospective monetary relief should be dismissed to the extent Plaintiff seeks to recover dues that were collected following his resignation. According to Defendants, this claim is moot because they refunded the subject dues to Plaintiff, and, therefore, there is no further relief available to Plaintiff in regard to his allegation that Defendants continued to deduct dues after he resigned. (Id. at 18.) Defendants also maintain that Plaintiff's claim for a refund of post-resignation dues does not present a live case or controversy because: Plaintiff cannot seek nominal damages because he has already been compensated fully through the refunded dues; the fact that Plaintiff has not deposited the check for the refunded amount is of no moment for purposes of whether there is subject matter jurisdiction over this claim; and any argument from Plaintiff that said refund is insufficient lacks merit because the amount of the refund exceeds the amount necessary to include both post-resignation dues and any applicable interest amount. (Doc. Nos. 29-1 at 20, 34 at 13.)[9]

---

[9] In addition, Defendant Catanese asserts that Plaintiff's claims against him "are redundant and should be dismissed" based on the proposition that "[c]laims under 42 U.S.C. § 1983 brought against individuals in their official capacities are generally 'redundant of the claims' against the entity of which they are a part." (Doc. No. 29-1 at 21) (quoting Damiano v. Scranton Sch. Dist., 135 F. Supp. 3d 255, 268 (M.D. Pa. 2015)). In response, Plaintiff asserts that "[a]lthough Defendant Catanese is sued only in his official capacity," because Defendant Catanese is "the individual who controls one of the named parties and thus may be in a position to carry out any

## 2.    Plaintiffs' Arguments in Opposition to Dismissal

In opposition, Plaintiff argues that dismissal is improper because Defendants' conduct after the filing of this suit does not negate subject matter jurisdiction, and Defendants' additional factual averments do not demonstrate that Plaintiff lacks standing in this case.  (Doc. No. 33 at 11, 18.)  As to his first argument, Plaintiff states that neither his request for prospective relief nor his claim for damages is moot because "Defendants have neither changed their unconstitutional policy nor admitted that the [challenged] provision[s] and the denial of due process concerning [Plaintiff's] resignation are unconstitutional[,]" and "have not even offered [Plaintiff] the full damages relief he has requested regarding either pre- or post- resignation dues."  (Id. at 11-12.)  According to Plaintiff, "[a]ll Defendants have offered are self-interested, post-filing promises of voluntary cessation, which do not moot this case."  (Id. at 12.)  Stating that the true basis for Defendants' arguments in favor of dismissal is mootness, rather than standing, Plaintiff rebuffs Defendants' argument that jurisdiction is lacking because his resignation has already been accepted and asserts that "Defendants' argument hinges on their representation – made for the first time in their brief – that [Plaintiff] 'would not be treated as a union member subject to the challenged CBA provision upon his return to work,' because his union resignation has been 'accepted.'"  (Id. at 12-13.)  Plaintiff asserts that, to the contrary, the amended complaint makes the following clear: Defendants have never responded to his resignation letter; Defendants have

---

orders directed toward PSSU," Plaintiff "has also requested that any injunctive relief requested in the prayer for relief enjoin all named Defendants" and their officers, employees, agents, or others acting in concert with them from the complained of conduct.  (Doc. No. 33 at 23.)  Plaintiff states that, accordingly, he "will not oppose Defendant Catanese's request to be dismissed as a named defendant."  (Id.)  The Court agrees that an official-capacity suit against Defendant Catanese is redundant in light of Plaintiff's claims against Defendant PSSU, and, accordingly, will grant Defendants PSSU and Catanese's motions as to Plaintiff's claims against Defendant Catanese.  (Doc. No. 27.)

never indicated Plaintiff was no longer considered a union member; Defendants "never refunded his dues"; and Defendants never stated that, upon reinstatement, the deductions would cease. (Id. at 13.) According to Plaintiff, Defendants never made these assertions until after he initiated the instant case, and, therefore, the statements constitute only voluntary cessation that does not render his claims moot. (Id.)[10]

In addition, Plaintiff asserts that his damages requests are not moot because the refund given to him is "only partial, and thus the requested relief is not mooted." (Id. at 17.) Plaintiff states that Defendants did not refund to him the interest on his dues, which he specifically requests in the first amended complaint, and that they "have not even offered [him] his requested nominal damages for the violation of his constitutional rights nor the damages resulting from the union dues seized before his resignation." (Id.) In addition, Plaintiff posits that he has not yet deposited the refund payment, which he states demonstrates the existence of a live case or controversy as to his damages request. (Id. at 17-18.)

B.      Whether the Court Should Grant Defendants' Motions to Dismiss

The Court observes initially that the parties differ in characterizing the central issue before the Court in deciding the instant motions. While Defendants assert that Plaintiff's claims for relief are non-justiciable because Plaintiff lacks standing to pursue them (Doc. Nos. 28-1 at 5, 29-1 at 6), Plaintiff describes this case as presenting a question of potential mootness that is negated by Defendants' voluntary cessation of the challenged conduct (Doc. No. 33 at 12). This distinction is important in light of the differing burdens associated with standing and mootness,

---

[10] In addition, Plaintiff states that "[j]ust as Defendants now purport to retroactively recognize [his] resignation and not enforce the maintenance of membership provision against him, they could decide, upon his reinstatement, to retroactively rescind that decision not to enforce." (Doc. No. 33 at 15-16.)

for the burden attached to standing rests with the Plaintiff, while Defendants bear the burden of

demonstrating mootness.[11]  In the instant case, the Court finds that it lacks subject matter

jurisdiction over Plaintiff's claims for prospective declaratory and injunctive relief because

Plaintiff lacks standing for purposes of these claims, while subject matter jurisdiction is lacking

as to Plaintiff's claims for retrospective relief because those claims are moot.  Accordingly, the

Court will grant Defendants' motions as to these claims, but will also direct the filing of

additional briefing as to two ostensibly remaining claims: Plaintiff's claim as to pre-resignation

dues set forth in Count II of the amended complaint, and Plaintiff's due process claim asserted in

Count III of the amended complaint.

### 1.    Plaintiff's Claims for Prospective Declaratory and Injunctive Relief

The Court concludes that it lacks subject matter jurisdiction over Plaintiff's claims for

prospective declaratory and injunctive relief because Plaintiff lacks standing as to these claims.

As noted previously, Plaintiff shoulders the burden of establishing that each of the following

elements of standing has been satisfied: (1) that he "has suffered an 'injury in fact' that is

(a) concrete and particularized and (b) actual and imminent, not conjectural or hypothetical";

(2) "the injury is fairly traceable to the challenged action of [] Defendants"; and (3) "it is likely,

as opposed to merely speculative, that the injury will be redressed by a favorable decision."  See

Freedom From Religion Found. Inc. v. New Kensington Arnold Sch. Dist., 832 F.3d at 476

(quoting Friends of the Earth, 528 U.S. at 167, 180-81).  In this case, while the parties ostensibly

---

[11] As to standing, "[t]he plaintiff has the burden of demonstrating that the[] requirements are met 'at the commencement of the litigation,' and must do so 'separately for each form of relief sought.'"  See Freedom From Religion Found. Inc. v. New Kensington Arnold Sch. Dist., 832 F.3d 469, 476 (3d Cir. 2016) (quoting Friends of the Earth, 528 U.S. at 184-85).  In regard to mootness, "[t]he party asserting that a claim is moot must show that it is 'absolutely clear that the allegedly wrongful behavior [is] not reasonably [] expected to recur.'"  See id. (second and third alterations in original) (quoting Friends of the Earth, 528 U.S. at 189).

offer different accounts of the circumstances under which Plaintiff resigned from union membership, the parties agree that Plaintiff is no longer a member of Defendant PSSU and is no longer employed with the County.  Accordingly, while Plaintiff emphasizes the possibility that he may be reinstated, such an argument is ultimately grounded in speculation and, therefore, does not warrant denial of the instant motions.  See Lujan, 504 U.S. at 561 ("[I]t must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" (quoting Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26, 38, 43 (1976))).  Because Plaintiff's request for prospective relief is based on an "unknown event at some unknown time," the Court is unpersuaded that there is a live case or controversy as to Plaintiff's claims through which he seeks prospective declaratory and injunctive relief.  See Lamberty v. Conn. State Police Union, No. 3:15-cv-378, 2018 WL 5115559, at *9 (Oct. 19, 2018) (citing Lujan, 504 U.S. at 561).[12]  The Court, therefore, will grant Defendants' motions to dismiss as to Plaintiff's claims for prospective declaratory and injunctive relief without prejudice.[13]

### 2.      Plaintiff's Claims for Retrospective Monetary Relief

---

[12] In light of the Court's conclusion described supra, the Court finds that jurisdictional discovery would be improper, for "courts in this Circuit have disfavored discovery to establish subject matter jurisdiction where discovery would be unnecessarily burdensome or futile."  See Wright v. N.J./Dep't of Educ., 115 F. Supp. 3d 490, 497 (D.N.J. 2015) (summarizing case law in which courts denied jurisdictional discovery for such reasons).  Here, Plaintiff has not shown why jurisdictional discovery would not be unduly burdensome or futile, and because the Court concludes that permitting discovery would not alter its conclusion herein that it lacks subject matter jurisdiction over the challenged claims, the Court will deny Plaintiff's request for jurisdictional discovery.

[13] The Court is mindful of the possibility that Plaintiff could be reinstated, and while the Court lacks jurisdiction over Plaintiffs' claims for prospective relief, it is not implausible that, at some future point, Plaintiff could be subject to the challenged PERA and CBA provisions and experience the complained-of conduct from Defendants.  Accordingly, the Court will dismiss the relevant claims without prejudice to Plaintiffs' ability to renew such claims under appropriate circumstances.  See Lamberty, 2018 WL 5115559, at *9 (recognizing the plaintiffs' "ability to return to federal court if [the] [d]efendants were to resume their collection of agency fees" that the plaintiffs had challenged).

The Court also concludes that dismissal of Plaintiff's claims for retrospective monetary relief in the form of post-resignation due payments is proper because Plaintiff's claim has been rendered moot by the refund provided by Defendants. Of moment in this case is the proposition that "[a]fter the party asserting mootness bears the burden, the burden shifts to the party opposing mootness to explain why the case is not moot." See Seneca Res. Corp. v. Twp. of Highland, 863 F.3d 245, 254 (3d Cir. 2017) (citing Richardson v. Bledsoe, 829 F.3d 273, 283 n.4 (3d Cir. 2016)). While Defendants initially have a heavy burden in demonstrating mootness,[14] the Court finds that as to Plaintiff's claim for post-resignation dues, Defendants have met their burden because they have demonstrated that as to the relief Plaintiff seeks – a refund of dues deducted following his resignation – Plaintiff's "interest in the outcome" of this case no longer "continues to exist." See Freedom From Religion Found., 832 F.3d at 476 (quoting Cook v. Colgate Univ., 992 F.2d 17, 19 (2d Cir. 1993)).

Because Defendants have met their burden in demonstrating the mootness of Plaintiff's claim for post-resignation dues, Plaintiff must demonstrate why this claim is not moot, and the Court finds that Plaintiff has failed to meet this burden. Plaintiff stresses that this refund is indicative of voluntary cessation on the part of Defendants only for the purpose of mooting this case. (Doc. No. 33 at 14) (stating that "Defendants' motions to dismiss hinge on their attempt to moot the case by their voluntary cessation"). To this point, the Court is mindful of the admonition that measures taken to negate the existence of subject matter jurisdiction "must be viewed with a critical eye." See Sands v. Nat'l Labor Relations Bd., 825 F.3d 778, 784-85 (D.D.C. 2016) (quoting Knox v. Service Employee's Int'l Union, Local 1000, 567 U.S. 298, 308

---

[14] See Seneca Res. Corp., 863 F.3d at 254 (recognizing that "[t]he party asserting mootness bears a heavy burden to show the case is moot" (citing Burns v. Pa. Dep't of Corrs., 544 F.3d 279, 284 (3d Cir. 2008)).

(2012)).  Accordingly, the Court must not immediately accept that Defendant's refund of dues renders Plaintiff's request for relief moot.  In this case, though, there is nothing to suggest, aside from Plaintiff's own assertions, that he would become a member of Defendant PSSU in the future and suffer the complained-of conduct again.  It follows that Plaintiff "cannot reasonably be expected to suffer another [such] violation at the hands of this union[,]" and, therefore, Plaintiff's claim for retrospective monetary relief as to post-resignation dues is moot.  See id. at 785 (discussing whether labor violation at issue could not "'reasonably be expected to happen again" (citing <u>Friends of the Earth</u>, 528 U.S. at 189)).[15]

### 3.    Request for Refund of Pre-Resignation Dues Asserted in Count II and Due Process Claim Set Forth in Count III

As noted previously, the Court has observed that Defendants' briefing appears to argue in favor of the dismissal of only certain claims, not including Plaintiff's apparent claim for pre-resignation dues set forth in Count II or his due process claim asserted through Count III.  (Doc. Nos. 28-1, 29-1.)  Defendants, however, indicated at oral argument that they seek dismissal of all claims asserted in Plaintiff's complaint, including the aforementioned claims.  The Court finds that, at this juncture, any consideration of potential dismissal of these claims would be improper because the parties have not submitted appropriate briefing on this issue, and out of an abundance of caution, the Court will direct Defendants to submit additional briefing, to which

---

[15] To the extent Plaintiff asserts that he is also entitled to nominal damages in his claim regarding post-resignation dues, the Court agrees with Defendants' argument that "nominal damages are available only to plaintiffs who suffer an alleged injury that does not give rise to a compensatory damages claim" (Doc. No. 34 at 11), in light of the general proposition that nominal damages are appropriate where there is no showing of an actual injury for which compensatory damages would be awarded.  <u>See, e.g.</u>, <u>Freedom from Religion Found., Inc. v. Connellsville Area Sch. Dist.</u>, 127 F. Supp. 3d 283, 299 (W.D. Pa. 2015) (acknowledging that "[n]ominal damages have traditionally 'vindicated deprivations of certain 'absolute' rights that are not shown to have caused actual injury" (quoting <u>CMR D.N. Corp. v. City of Phila.</u>, 703 F.3d 612, 628 (3d Cir. 2013))).

Plaintiff will be provided an opportunity to respond, that specifies whether they are moving for dismissal under Rule 12 as to Plaintiff's claim for pre-resignation dues in Count II and his due process claim set forth in Count III, and includes an appropriate discussion of the authority Defendants contend supports dismissal in this case.

IV.     **CONCLUSION**

Based on the foregoing, the Court will grant the motions and direct the submission of additional briefing in accordance with the Court's discussion <u>supra</u>.  An appropriate Order follows.